No. 24-1753

# United States Court of Appeals for the Third Circuit

ATTORNEY GENERAL OF THE STATE OF NEW JERSEY ET AL.,

*Plaintiffs-Appellees,*

v.

THE DOW CHEMICAL COMPANY ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:23-cv-2449
Hon. Robert Kirsch

## DEFENDANTS' MOTION FOR A STAY PENDING APPEAL

Elliott M. Davis
SHOOK, HARDY & BACON L.L.P.
1800 K St. NW, Suite 1000
Washington, D.C. 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

Kasdin M. Mitchell
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Tex. 75205
Telephone: (214) 972-1770
Facsimile: (214) 972-1771

*Counsel for Defendant-Appellant The Dow Chemical Company*

(*Additional Counsel Appear on Signature Page*)

July 10, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION .................................................................................. 1

BACKGROUND ..................................................................................... 3

JURISDICTION ..................................................................................... 7

LEGAL STANDARD ............................................................................ 10

ARGUMENT ........................................................................................ 10

I.     *COINBASE V. BIELSKI* MANDATES A STAY ............................ 10

II.    DEFENDANTS ALSO ARE ENTITLED TO A *NKEN* STAY. ..... 14

       A.     Defendants Are Likely To Succeed On Appeal .................... 14

       B.     Defendants Face Irreparable Harm Absent A Stay. ........... 21

       C.     The Balance Of The Equities And Public Interest
            Factors Favor A Stay. ......................................................... 24

CONCLUSION ..................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.O.A. v. Rennert,*
    2023 WL 8641601 (E.D. Mo. Sept. 5, 2023).......................................13

*Academy of Country Music v. Continental Casualty Co.,*
    991 F.3d 1059 (9th Cir. 2021).....................................................8, 9, 13

*Arizona v. Manypenny,*
    451 U.S. 232 (1981)......................................................................21, 24

*Ayo v. 3M Co.,*
    2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) ..................................26

*Bogosian v. Gulf Oil Corp.,*
    738 F.2d 587 (3d Cir. 1984) ..............................................................22

*Boyle v. United Technologies Corp.,*
    487 U.S. 500 (1988)...........................................................................18

*BP P.L.C. v. Mayor & City Council of Baltimore,*
    141 S. Ct. 1532 (2021).......................................................................11

*Brinkman v. John Crane, Inc.,*
    2015 WL 13424471 (E.D. Va. Dec. 14, 2015)....................................23

*Carley v. Wheeled Coach,*
    991 F.2d 1117 (3d Cir. 1993) ............................................................20

*Cessna v. REA Energy Cooperative, Inc.,*
    753 F. App'x 124 (3d Cir. 2018) .......................................................15

*Coinbase, Inc. v. Bielski,*
    599 U.S. 736 (2023).........................1, 6, 9, 10, 11, 12, 13, 22

*In re Commonwealth's Motion to Appoint Counsel Against or*
    *Directed to Defender Association of Philadelphia,*
    790 F.3d 457 (3d Cir. 2015) ........................................................17, 21

*Dalton v. Walgreen Co.*,
  2013 WL 2367837 (E.D. Mo. May 29, 2013) ........................................ 23

*Delaware ex rel. Jennings v. BP America Inc.*,
  2022 WL 605822 (D. Del. Feb. 8, 2022) ............................................... 23

*In re Digicon Marine, Inc.*,
  966 F.2d 158 (5th Cir. 1992) ................................................................. 8

*Forty Six Hundred LLC v. Cadence Education, LLC*,
  15 F.4th 70 (1st Cir. 2021) ..................................................... 8, 9, 13

*Georgia v. Clark*,
  2023 WL 11796094 (N.D. Ga. Nov. 9, 2023) .................................... 14

*Georgia v. Clark*,
  2023 U.S. App. LEXIS 34018 (11th Cir. Dec. 21, 2023) .................... 13

*Gregg v. Georgia*,
  428 U.S. 153 (1976) ............................................................................ 26

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982) ....................................................................... 12, 13

*Hudson United Bank v. LiTenda Mortgage Co.*,
  142 F.3d 151 (3d Cir. 1998) ............................................................ 7, 8

*Jefferson County v. Acker*,
  527 U.S. 423 (1999) .............................................................. 15, 17, 20

*Landis v. North American Co.*,
  299 U.S. 248 (1936) .............................................................................. 8

*Lexmark International, Inc. v.
Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................ 26

*Estate of Maglioli v. Andover Subacute Rehablitation Center*,
  2021 WL 2525714 (D.N.J. Jun. 18, 2021) ................................... 23, 24

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) (en banc) ............................................. 12

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ............................................................................ 21

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................................ 17

*Nken v. Holder*,
    556 U.S. 418 (2009) .............................................. 2, 6, 10, 14, 21, 24, 25

*Northrop Grumman Technical Services, Inc. v.*
    *DynCorp International LLC*,
    2016 WL 3346349 (E.D. Va. Jun. 16, 2016) ..................................... 24

*Papp v. Fore-Kast Sales Co.*,
    842 F.3d 805 (3d Cir. 2016) .................................... 7, 15, 16, 17, 18, 19

*Plaquemines Parish v. Chevron USA, Inc.*,
    84 F.4th 362 (5th Cir. 2023) ................................................................ 8

*Raskas v. Johnson & Johnson*,
    2013 WL 1818133 (E.D. Mo. Apr. 29, 2013) .................................... 23

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015) .................................................. 10, 14, 21

*Shapiro v. Logistec USA, Inc.*,
    412 F.3d 307 (2d Cir. 2005) ................................................................ 8

*Texas v. United States Environmental Protection Agency*,
    2023 WL 7204840 (5th Cir. May 1, 2023) ......................................... 25

*Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217
    (3d Cir. 1995) ...................................................................................... 7

*Troy v. Samson Manufacturing Corp.*,
    758 F.3d 1322 (Fed. Cir. 2014) ......................................................... 12

*In re U.S. Healthcare*,
    159 F.3d 142 (3d Cir. 1998) ................................................................ 9

*United States v. Trump*,
    2023 WL 8615775 (D.D.C. Dec. 13, 2023) ........................................ 13

*Willingham v. Morgan*,
　395 U.S. 402 (1969)................................................ 15, 18, 26

**Statutes**

28 U.S.C. §1442(a) ................................................................ 15

28 U.S.C. §1447(d) ............................................................ 7, 11

28 U.S.C. §1455 .................................................................... 14

**Rules**

Federal Rule of Appellate Procedure 8(a)........................... 1, 9

Federal Rule of Civil Procedure 62(a)..................................... 9

**Other Authorities**

H. Rep. 112-17 (2011), reprinted in 2011 U.S.C.C.A.N. 420 ........... 21, 22

## INTRODUCTION

Defendants move this Court for a stay pending appeal under Rule 8(a).

This appeal arises from the grant of a remand motion where removal was based in part on the federal-officer removal statute. Congress expressly provided a statutory right to appeal in these circumstances—a right that would be rendered illusory without a stay. Indeed, last Term, the Supreme Court held in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), that district courts "must stay" proceedings pending an appeal of a denial of a motion to compel arbitration because (i) Congress expressly provided a right to appeal in those circumstances, and (ii) the entire question before the court of appeals is whether the case should proceed in federal court. *Id.* at 738, 741.

*Coinbase*'s reasoning applies with full force here: Congress has provided a right to immediately appeal a remand order where the case was removed on federal-officer grounds, and the issue on appeal is whether this case should proceed in federal court. This Court should enter a stay pending appeal in accordance with *Coinbase*.

Defendants also readily satisfy the traditional stay factors. *Nken v. Holder*, 556 U.S. 418 (2009). Indeed, Defendants are likely to succeed on the merits of their appeal because The Dow Chemical Company properly removed this action on federal-officer grounds.

In the 1960s, Dow collaborated with the federal government to develop appropriate federal specifications for 1,1,1-trichloroethane, or "TCA," a solvent used to degrease metal, among other applications. Those specifications required that TCA be "inhibited," or stabilized, so that it would not corrode the metal it was cleaning. Dow then manufactured TCA to the government's specifications. And the government consumed millions of pounds of the product. The state's claims in this case—principally that 1,4-dioxane ("dioxane") (a chemical compound) and dioxane-containing products (including dioxane-stabilized TCA) have allegedly contaminated certain of its natural resources—are thus barred by the government-contractor defense. Construing these facts in the light most favorable to Dow, as this Court must on the state's facial challenge to federal jurisdiction, Defendants are likely to succeed on the merits of their appeal based on the broadly construed federal-officer removal statute.

Defendants will be harmed irreparably without a stay because the purpose of the federal-officer removal statute is to immunize federal agents from defending their conduct in state court. That guarantee effectively is nullified if Defendants must litigate their appeal while simultaneously proceeding with discovery and pre-trial motion practice in state court, potentially resulting in the waste of unrecoverable judicial and party resources.

The state, in contrast, will suffer no comparable irreparable injury by a stay. The state waited at least *nine years* before filing this suit and has no interest in its home-town court expending unnecessary resources in the event this action returns to federal court. For many of the same reasons, the public interest favors a stay because it will effectuate Congress's intent, conserve resources, and avoid procedural complications should this case return to federal court after proceedings in state court.

## BACKGROUND

In 2023, the New Jersey Attorney General and various New Jersey state entities (collectively, the "state") filed suit in New Jersey state court alleging natural-resource damage from dioxane contamination. The state

sued Dow, which manufactured dioxane and dioxane-stabilized TCA; Vulcan, which manufactured dioxane-stabilized TCA; and Ferro, which manufactured dioxane. The state alleges that unspecified releases of dioxane-stabilized TCA products by unspecified persons at unspecified locations at unspecified times during the last six decades has resulted in dioxane contamination to unspecified sites throughout New Jersey. *See generally* Exh.1 (Complaint) ¶¶1-13, 31-33. The complaint seeks the "full cost of restoring" New Jersey to a dioxane-less condition, *e.g.*, *id.* ¶113, notwithstanding that (i) Defendants stopped manufacturing dioxane and dioxane-stabilized TCA long ago, and (ii) dioxane remains in countless consumer and commercial products to this day.

Because Dow manufactured dioxane-stabilized TCA products for the federal government and to the federal government's specifications, Dow timely removed this case to federal court on federal-officer grounds. Exh.2 (Notice of Removal, "NOR").[1] Vulcan and Ferro consented to Dow's removal. Exhs.3, 4.

---

[1]     In addition to federal-officer grounds, Dow also removed this action on three other grounds.

In the district court, Dow explained that the dioxane-stabilized TCA it manufactured and sold resulted from its collaboration with federal authorities in the 1960s to develop a new vapor-degreasing solvent after a pollution regulation, known as Rule 66, effectively phased out the use of another such solvent. Meetings between government and industry yielded two federal specifications, MIL-T-81533A ("MilSpec") and OT-620c ("FedSpec"). *See* Exh.2 (NOR) ¶¶6-8. These specifications required, among other things, the addition of an inhibiting agent (like dioxane) to TCA. *Id.* By the 1970s, the federal government, led by the Navy, consumed 8.6 million pounds of specification-compliant TCA annually. *See* Exh.5 (EPA Report) at PageID 1069. The notice of removal also provided facts showing that, based on the state's allegations, the potential sources of TCA-related dioxane contamination in the record included military facilities. *See* Exh.2 (NOR) ¶¶11, 22, 52.

Still, on April 23, 2024, the district court granted the state's motion to remand. Exh.6 (Opinion); Exh.7 (Order). The clerk then purported to execute the remand order by immediately transmitting it to the state court. Exh.8 (Transmittal Letter). Defendants noticed an appeal that same day. Exh.9 (Notice of Appeal).

On April 25, 2024, however, the district court affirmed that the execution of the remand order had automatically been stayed for 30 days after its entry pursuant to Federal Rule of Civil Procedure 62(a). Exh.10 (Letter Order). The following day, Defendants moved the district court for a stay pending appeal. Exh.11 (Motion).

The district court later granted the parties' stipulation to extend the temporary stay through June 14, 2024, and then further extended the stay through one week after its decision on Defendants' motion for stay pending appeal. Exh.12 (Stipulation and Order); Exh.13 (Letter Order).

On July 9, 2024, the district court denied Defendants' motion for a stay pending appeal. Exh.14 (Opinion); Exh.15 (Order). The court declined to enter a *Coinbase* stay, holding that *Coinbase* is limited to the arbitration context. Exh.14 at 19-24. And the court declined to enter a *Nken* stay, concluding that Defendants did not demonstrate a likelihood of success on the merits or irreparable harm. *Id.* at 6-19.

Notwithstanding its earlier order extending the stay through one week *after* its decision on the stay motion, the court ordered the clerk to

remand the action to state court, and the clerk immediately complied. Exh.15 (Order); Exh.16 (Transmittal Letter).

Defendants now move this Court for a stay pending appeal.

## **JURISDICTION**

When a case is removed under the federal-officer removal statute, 28 U.S.C. §1442(a), an order remanding that case "shall be reviewable by appeal." 28 U.S.C. §1447(d); *see, e.g., Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810 n.3 (3d Cir. 2016).

The Court maintains its appellate jurisdiction here despite "[t]he general rule" that "a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court." *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995). That "general rule" does not apply in the context of *appealable* remand orders. Even after "the remand order ha[s] been sent to the state court," this Court is still "authorized to exercise [appellate] jurisdiction over the remand order" where, as here, "appellate review" is "not bar[red]" by §1447(d). *Hudson United Bank v. LiTenda Mortg. Co.*, 142 F.3d 151, 155 (3d Cir. 1998). Put differently, when the general §1447(d) bar does not apply, "the mailing of the remand order to the state

7

court does not strip the federal court of jurisdiction." *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 312 (2d Cir. 2005) (citing *Hudson United Bank*, 142 F.3d at 159); *accord, e.g., Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79-81 (1st Cir. 2021); *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1063-65 (9th Cir. 2021); *In re Digicon Marine, Inc.*, 966 F.2d 158, 160-61 (5th Cir. 1992). "Any other jurisdictional holding would be troubling," in part because it would "countenance a district court evading review by immediately transmitting its remand order to the state court." *Acad. of Country Music*, 991 F.3d at 1063, 1065.

Because this Court has jurisdiction to reverse the district court's already-mailed remand order, it likewise "ha[s] jurisdiction to stay [the] already-mailed remand order." *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 367, 371-72 (5th Cir. 2023). After all, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

And this conclusion holds especially true here, where the clerk exceeded its authority in both attempts to execute the remand order. "[S]ending a certified copy of a remand order executed by a judicial officer

without power to issue the order"—like the clerk below—does not "place the order beyond judicial review." *In re U.S. Healthcare*, 159 F.3d 142, 147 n.5 (3d Cir. 1998). The clerk lacked authority to execute the remand order on April 23 because execution of the order had been "[a]utomatic[ally] … stayed for 30 days after its entry." Fed. R. Civ. P. 62(a); *see* Exh.10 (Letter Order). And the clerk similarly lacked authority to execute the remand order on July 9 because Defendants had already filed their notice of appeal (Exh.9), which, as explained below, triggered a mandatory, automatic stay under *Coinbase*.

Though there is no "formal procedural mechanism for the retrieval of a removed case erroneously returned to a state court," "general principles of comity, cooperation, and communication between state and federal courts are []adequate to bridge this procedural gap." *Forty Six Hundred LLC*, 15 F.4th at 79. For example, this Court can simply "notify the [state court] that the [federal] court [system] has resumed jurisdiction over th[is] action," *Acad. of Country Music*, 991 F.3d at 1070, and then proceed to enter a stay pending appeal, *see* Fed. R. App. P. 8(a).

## LEGAL STANDARD

As explained below, stays of remand orders in federal-officer-removal appeals are automatic and mandatory, as made clear in *Coinbase*. *See* 599 U.S. at 741-44.

In the alternative, this Court has discretionary, inherent power to "hold an order in abeyance while it assesses the legality of the order." *Nken*, 556 U.S. at 426. Four factors guide the Court's discretion:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quotation omitted). Success or failure on one factor is not necessarily controlling. *See id.* The first two factors are the "most critical" ones, *id.*, and of those two factors, the first one—likelihood of success—is "more important." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

## ARGUMENT

## I. *COINBASE V. BIELSKI* MANDATES A STAY.

Last summer, in the context of the denial of a motion to compel arbitration, the Supreme Court held that lower courts "must stay" proceedings when (i) a party exercises a statutory right to appeal, and

(ii) the question before the appellate court is "whether the litigation may go forward in the district court." *Coinbase*, 599 U.S. at 738. Stays are mandatory in those circumstances because "when Congress wants to authorize an interlocutory appeal, but *not* to automatically stay district court proceedings pending that appeal, Congress typically says so." *Id.* at 744.

Here, Congress conferred on Defendants a statutory right to appeal remand orders following removal on federal-officer grounds. *See* 28 U.S.C. §1447(d). Since §1447(d) contains no such "'non-stay' provision," the general rule—that "Congress need not say anything about a stay" to automatically confer one—applies here. *Coinbase*, 599 U.S. at 744. And that conclusion aligns with Congress's intent—as spelled out by the Supreme Court—"to allow appellate review *before* a district court may remand a [federal-officer] case to state court." *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1536 (2021) (emphasis added).

The district court noted that *Coinbase* concerned an arbitration-related appeal, and not federal-officer removal. That is true, but *Coinbase* expressly rejected the proposition that it was "creat[ing] a special, arbitration-preferring procedural rule." 599 U.S. at 746. And "lower

courts are 'bound not only by the holdings of higher courts' decisions but also by their mode of analysis.'" *Troy v. Samson Mf'g Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).

*Coinbase*, in fact, turned on the "longstanding tenet of American procedure" that "[a]n appeal … 'divests the district court of its control over those aspects of the case involved in the appeal.'" 599 U.S. at 740 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). In *Griggs*, the Supreme Court explained that two fora should not "attempt to assert jurisdiction over a case simultaneously." 459 U.S. at 58. That is why a notice of appeal is a "jurisdictional event"—one that "divests" the lower court of its power "over those aspects of the case involved in the appeal." *Id*. And when an appeal concerns where "the case belongs," the "entire case is essentially involved in the appeal." *Coinbase*, 599 U.S. at 741 (quotation omitted). Even though *Griggs* did not concern arbitration, *Coinbase* nonetheless concluded that *Griggs* "resolves this case." *Id.* As *Coinbase* shows, *Griggs* resolves this case as well.

In fact, this outcome was predicted by the *Coinbase* dissent, which decried the majority's decision precisely because the majority's logic

would apply to "a wide array of appeals," *id.* at 760 (Jackson, J., dissenting), at least where Congress has "created a right to an" immediate appeal, *id.* at 746. *Cf. United States v. Trump*, 2023 WL 8615775, at *1 (D.D.C. Dec. 13, 2023) (entering *Coinbase* stay pending interlocutory appeal concerning immunity); *A.O.A. v. Rennert*, 2023 WL 8641601, at *1 (E.D. Mo. Sept. 5, 2023) (entering *Coinbase* stay pending interlocutory appeal concerning dismissal based on transnational doctrines). And the dissent expressly identified "appeals over … federal-court jurisdiction" as one such type of appeal that would fall within the scope of the majority opinion. *Coinbase*, 599 U.S. at 760 (Jackson, J., dissenting). That observation was correct; this Court should grant a mandatory stay pending appeal.[2]

---

[2]      To be sure, the Eleventh Circuit, in a brief, unpublished, per curiam opinion, declined to apply *Coinbase* in the federal-officer-removal context on grounds that *Coinbase* "was limited to arbitration proceedings." *Georgia v. Clark*, 2023 U.S. App. LEXIS 34018, at *2 (11th Cir. Dec. 21, 2023). But again, *Coinbase* is not limited to the arbitration context. Indeed, *Clark* noted that "[i]f the *Griggs* principle applied"—and it does— the defendant "could perhaps stay his *district* court proceedings." *Id.* That is essentially what Defendants seek here. Unlike the *Clark* defendant, who sought "a stay of his *state* court prosecution," *id.*, Defendants here ask the Court to notify the state court that this action was prematurely remanded and that the federal-court system has resumed its jurisdiction—which the Court is empowered to do, *see Forty Six Hundred LLC*, 15 F.4th at 79; *Acad. of Country Music*, 991 F.3d at

## II.  DEFENDANTS ALSO ARE ENTITLED TO A *NKEN* STAY.

In the alternative, Defendants are entitled a stay under *Nken*, as they are likely to prevail on appeal, they will suffer irreparable harm absent a stay, and the balance of equities and the public interest all favor a stay pending appeal.

### A.  Defendants Are Likely To Succeed On Appeal.

The first *Nken* factor—"whether the stay applicant has made a strong showing that he is likely to succeed on the merits," 556 U.S. at 426 (quotation omitted)—is readily satisfied here. A stay applicant makes the requisite "strong showing" for this factor by articulating a "reasonable chance" of winning. *Revel*, 802 F.3d at 568-69 (quotations omitted). The applicant need not show that it is "more likely than not" to succeed. *Id.* at 569 (quotation omitted). Defendants have a "reasonable chance" of prevailing on their appeal of the district court's remand order, which this Court reviews *de novo*, taking all of Defendants' removal "allegations as

---

1070—and then to stay further district-court proceedings pending this appeal. Moreover, the *Clark* defendant also removed under 28 U.S.C. §1455, which provides that removal generally "shall *not* prevent the State court … from proceeding further." §1455(b)(3) (emphasis added); *see Georgia v. Clark*, 2023 WL 11796094, at *3 (N.D. Ga. Nov. 9, 2023).

true" and construing them "in the light most favorable to" Defendants. *Papp*, 842 F.3d at 811.

Dow removed this action in part based on 28 U.S.C. §1442(a)'s federal-officer provision. *See* Exh.2 (NOR) ¶¶13, 17-27. Unlike most removal statutes, §1442(a) is "broadly construed in favor of a federal forum." *Papp*, 842 F.3d at 811 (quotation omitted); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (policy of broad federal-officer removal "should not be frustrated by a narrow, grudging interpretation"). And in doing so, the court must "credit [Defendants'] theory of the case for purposes of [this] jurisdictional inquiry." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). At this stage, Defendants "do[] not need to prove" that they are "correct." *Cessna v. REA Energy Coop., Inc.*, 753 F. App'x 124, 128 (3d Cir. 2018). That is because forcing Defendants to prove "the merits" at this stage "would defeat the purpose of the removal statute." *Acker*, 527 U.S. at 432.

Dow appropriately invoked federal jurisdiction under §1442(a), which considers whether:

> (1) the defendant is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the

defendant are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims.

*Papp*, 842 F.3d at 812. As explained below (and as will be explained more fully in Defendants' imminent appellate brief), Dow satisfies each element.

*First*, Dow is a "person" because that term includes corporations. *See id.*

*Second*, Dow "easily satisfies the 'acting under' requirement" because it "produce[d] an item the government needed," and without Dow's assistance, "the government otherwise would have been forced to produce [it] on its own." *Id.* at 813. After the Rule 66 pollution regulation "phased out the use of" another degreasing solvent, Exh.2 (NOR) ¶7, the federal government did not resort to off-the-shelf products. Instead, it issued the MilSpec and the FedSpec. Dow worked to "design[] TCA to meet the specifications required by" the government and, "months after the promulgation of" those specifications, "began manufacturing TCA to comply with those specifications." *Id.* ¶¶6-11. These allegations, taken as true and viewed in the light most favorable to Dow, create at least a reasonable chance of satisfying the "liberally construed" "acting under"

prong. *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Ass'n*, 790 F.3d 457, 468 (3d Cir. 2015) ("*Defender Ass'n*").

*Third*, Dow satisfies the "relating to" requirement. "'The ordinary meaning'" of "relating to" "'is a broad one.'" *Defender Ass'n*, 790 F.3d at 471 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). "[I]t is sufficient for there to be a 'connection' or 'association' between the act in question and the federal office." *Id.* And, at this stage, Defendants need to present only a plausible connection or association. *Acker*, 527 U.S. at 432. "[D]emanding an airtight case on the merits in order to show the required … connection" would "defeat the purpose of the [federal-officer] removal statute." *Id.*

There is a plausible "connection or association between the acts complained of by [the state] and the federal government." *Papp*, 842 F.3d at 813. The gist of the state's complaint is that its natural resources have been contaminated by dioxane in TCA. Exh.1 (Complaint) ¶¶1-13. But the federal government required that MilSpec- and FedSpec-compliant TCA be "inhibited." Exh.17 (MilSpec); Exh.18 (FedSpec). It is no answer that the government did not specify that TCA needed to be inhibited with *dioxane*, as opposed to some other compound. This Court has "explicitly

rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Removal does not turn on such "grudging" hair-splitting. *Willingham*, 395 U.S. at 407.

*Finally*, Dow has established a "colorable federal defense," *Papp*, 842 F.3d at 812—the government-contractor defense—which satisfies the final element of federal-officer removal. Exh.2 (NOR) ¶¶23-26; *Boyle v. United Tech. Corp.*, 487 U.S. 500, 507 (1988) (extending immunity to government suppliers because otherwise suppliers might supply the government on worse terms or not at all). The defense has three elements:

> (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512. Dow "need not win" its government-contractor defense "before [it] can have [the case] removed." *Willingham*, 395 U.S. at 407. Rather, Dow only needs to "show that its asserted *Boyle* defense [is] 'colorable.'" *Papp*, 842 F.3d at 815 (quotation omitted).

Dow satisfies the latter two elements by alleging that its dioxane-stabilized TCA products met "the[] federal government's specifications" and that it "did not have superior knowledge of any risks potentially posed by TCA not known to the federal government." Exh.2 (NOR) ¶¶25-26. *See Papp*, 842 F.3d at 814-15 ("Because we are bound to accept Boeing's assertion that the risks were not known to it, Boeing did not have any superior knowledge that it withheld from the government."). The only question is whether Dow has made a "colorable" argument that the federal government's TCA specifications were "reasonably" precise.

Dow made that showing. The MilSpec spans eleven pages, mandates no fewer than fourteen physical and chemical requirements, and incorporates numerous other specifications and standards. Exh.17. The ten-page FedSpec similarly lists over a dozen physical and chemical requirements, and it incorporates several other specifications and requirements. Exh.18. As noted above, both the MilSpec and the FedSpec required that the TCA be inhibited, *see* Exh.17 at 2; Exh.18 at 2—and it is the dioxane inhibitor in dioxane-stabilized TCA that the state alleges injured its natural resources.

To be sure, the MilSpec and FedSpec did not specifically require TCA to be inhibited with *dioxane*—and the state alleges that TCA could have been stabilized with "safer and feasible alternatives." Exh.1 (Complaint) ¶103. But the question whether "safer and feasible" alternative designs existed is a *merits* question—one that does not affect the removal analysis. *See Acker*, 527 U.S. at 432.

Nor does the government's decision not to specify a particular inhibitor preclude the government-contractor defense. In *Carley v. Wheeled Coach*, the plaintiff alleged that an ambulance manufactured pursuant to a government contract was defective "because of an excessively high center of gravity." 991 F.2d 1117, 1118 (3d Cir. 1993). The government contract specified a maximum center-of-gravity height (with which the contractor complied), but not a minimum height. *See id.* at 1125. Even though the contractor could have produced an ambulance with a lower center of gravity that still conformed to the government's specifications, that fact did not preclude the government-contractor defense. As this Court explained, "the government need not deprive the manufacturer of all discretion pertaining to a particular design feature in order for the government contractor defense to apply." *Id.* So too here.

To the extent doubt remains, it resolves in favor of a stay. Defendants need show only a "reasonable chance" of success on the merits to satisfy the first *Nken* factor. *Revel*, 802 F.3d at 568-69. "[T]he likelihood of winning on appeal need not be 'more likely than not.'" *Id.*

## B. Defendants Face Irreparable Harm Absent A Stay.

Defendants also would suffer irreparable harm absent a stay. *Nken*, 556 U.S. at 434. If the district court transmits this case back to state court, Defendants would be forced to litigate concurrent proceedings in this Court and state court. This would effectively strip away the immunity from suit to which Defendants are entitled under the government-contractor defense—the very defense Defendants have a right to have a federal court decide. *Defender Ass'n*, 790 F.3d at 474. That immunity is "effectively lost if a case is erroneously permitted" to proceed in the incorrect forum. *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985). The federal-officer removal statute exists because "[f]ederal officers or agents … should not be forced to answer for conduct asserted within their Federal duties in a state forum that invites 'local interests or prejudice' to color outcomes." H. Rep. 112-17, at 3 (2011), reprinted in 2011 U.S.C.C.A.N. 420, 422; *accord Arizona v. Manypenny*, 451 U.S. 232, 241-

42 (1981). But without a stay, Defendants will be "forced to answer for conduct … in a state forum"—precisely what the statute seeks to avoid—while this Court determines whether removal was proper. *Cf. id.*

Moreover, proceedings in the state court cannot easily be undone upon return to federal court. While the district court may be free to reevaluate certain state-court rulings (which would constitute a serious waste of resources in an already resources-constrained state-court system), there may be others whose bell cannot be un-rung, like certain privilege and document-production rulings. *Cf., e.g.*, *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984) ("mandamus may properly be used as a means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege" because "compliance with the production orders complained of destroys the right sought to be protected").

Nor can Defendants recoup any of the lost money and time they spend litigating for naught, as Defendants have no recourse against the state or the court system for the effects of the dual track. *See also Coinbase*, 599 U.S. at 746 (declaring the proposition that lower courts

have adequately protected stay applicants against litigation-related irreparable harm flatly "incorrect").

District courts in this Circuit and elsewhere have found that the burden of litigating the same case in multiple places, the risk of inconsistent or irreversible outcomes in one court, and the erosion of the practical value of an appeal of-right while a case marches toward final judgment together constitute irreparable harm. *See Estate of Maglioli v. Andover Subacute Rehab. Ctr.*, 2021 WL 2525714, at *7 (D.N.J. Jun. 18, 2021) (finding irreparable harm absent stay because appeal would then offer "meaningless victory" (quotation omitted)); *Delaware ex rel. Jennings v. BP Am. Inc.*, 2022 WL 605822, at *2-3 (D. Del. Feb. 8, 2022) (noting §1447(d) appeals, unlike certain other appeals, are meant to be "guaranteed," would be "seriously jeopardized" absent stay, and doubting the practicality of any attempt to "un-ring the bell" of state-court rulings); *Brinkman v. John Crane, Inc.*, 2015 WL 13424471, at *1 (E.D. Va. Dec. 14, 2015) (describing risks presented by state court rulings in the case); *Dalton v. Walgreen Co.*, 2013 WL 2367837, at *1 (E.D. Mo. May 29, 2013) (finding injury if a statutory appeal right is made "hollow"); *Raskas v. Johnson & Johnson*, 2013 WL 1818133, at *2 (E.D. Mo. Apr. 29, 2013)

(similar); *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3346349, at *3-4 (E.D. Va. Jun. 16, 2016) (similar).

Subjecting Defendants to litigation in New Jersey's courts against New Jersey's government over incendiary allegations that purportedly involve large numbers of New Jersey residents while New Jersey's courts adjudicate Defendants' federal defenses pre-trial would not leave Defendants "free from local interests," *Manypenny*, 451 U.S. at 242, nor would it effectuate the appeal Congress statutorily guaranteed. Defendants face irreparable harm without a stay.

## C.   The Balance Of The Equities And Public Interest Factors Favor A Stay.

The third *Nken* factor asks whether delay from a stay will "substantially injure" the opposing party. *Nken*, 556 U.S. at 434. Delay itself, "inherent in any stay, is insufficient to establish prejudice." *Maglioli*, 2021 WL 2525714, at *7. The state cannot articulate any "substantial injury" from a stay given that it waited until 2023 to file suit over alleged conduct stretching back to the 1960s, over a chemical the state admits it had knowledge of at least nine years ago. *See* Exh.1 (Complaint) ¶¶53-62 (discussing alleged TCA use in the 1960s and widespread testing for dioxane in New Jersey by 2015). The state's

"multi-year delay" in filing this action "undercuts any claim that time is of the essence." *Texas v. U.S. E.P.A.*, 2023 WL 7204840, at *11 (5th Cir. May 1, 2023).

Nor can the state credibly fear loss of evidence. The state's private counsel is currently litigating dioxane claims against the same Defendants in multiple suits filed in New York, starting in 2017. Defendants have had litigation holds in place for many years, and the state's counsel has conducted myriad depositions of Defendants' witnesses. *See Suffolk County Water Auth. v. Dow Chem. Co.*, No. 2:17-cv-06980 (E.D.N.Y.).

The last *Nken* factor, concerning "where the public interest lies," is sometimes said to "merge" with the third factor where the government opposes a stay. *Nken*, 556 U.S. at 434-35. That said, *Nken* addressed merger when the "government" was the federal government. *See id.* Here, New Jersey's claim to a public interest is offset by the competing interests of other states. For example, Michigan has an interest in protecting Michigan-native Dow from overreach, as do Dow's tens of thousands of employees and its millions of nationally dispersed public stakeholders.

Moreover, Defendants' right to appeal here is not some general right to appeal pursuant to a final judgment based on some broad grant of federal jurisdiction. Here, Dow invoked federal jurisdiction based in part on the federal-officer removal statute, for which Congress provided a right to appeal. Congress's judgment, too, reflects the public interest and counsels in favor of a stay. *See Gregg v. Georgia*, 428 U.S. 153, 175 (1976) (legislatures "respond to the will and consequently the moral values of the people"). In a similar vein, the public interest favors "protection of a federal forum" for federal defenses like those raised here. *Willingham*, 395 U.S. at 407; *see also Ayo v. 3M Co.*, 2018 WL 4781145, at *6 (E.D.N.Y. Sept. 30, 2018) (collecting cases explaining why federal officer removal reflects "the interest of public policy" (quotation omitted)). These factors help explain why here, as elsewhere, federal courts have "virtually unflagging" obligation to hear cases within their jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). The public interest factor, too, favors a stay.

## CONCLUSION

The Court should enter a stay pending appeal and notify the state court that the federal-court system has resumed jurisdiction over this action.

July 10, 2024

Respectfully submitted,

*/s/ Felice B. Galant* (with consent)
Felice B. Galant
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, N.Y. 10019
Tel.: (212) 318-3000
Fax: (212) 318-3400
felice.galant@
   nortonrosefulbright.com

*Attorneys for Defendant-Appellant*
*Legacy Vulcan, LLC*

*/s/ Eric Blumenfeld* (with consent)
Eric Blumenfeld
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, N.Y. 10004
Tel.: (212) 837-6118
Fax: (212) 299-6016
eric.blumenfeld@
   hugheshubbard.com

*Counsel for Defendant-Appellant*
*Vibrantz Corporation*

*/s/ Elliott M. Davis*
Kasdin M. Mitchell, P.C.
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Tex. 75205
Telephone: (214) 972-1770
Facsimile: (214) 972-1771
kasdin.mitchell@kirkland.com

Elliott M. Davis
SHOOK, HARDY & BACON L.L.P.
1800 K St. NW, Suite 1000
Washington, D.C. 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211
edavis@shb.com

Mary Rose Alexander
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, Ill. 60611
Telephone: (312) 876-7700
mary.rose.alexander@lw.com

*Counsel for Defendant-Appellant*
*The Dow Chemical Company*

# CERTIFICATE OF COMPLIANCE

I certify that:

1.      This motion complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 5160 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook font.

Dated:  July 10, 2024                    */s/ Elliott M. Davis*
                                          Elliott M. Davis

                                          *Counsel for*
                                          *The Dow Chemical Company*

# CERTIFICATE OF SERVICE

I certify that on July 10, 2024, I caused an electronic version of this document to be filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit through the appellate CM/ECF system, which will serve the following counsel of record:

| | |
|---|---|
| Matthew K. Edling | Dianna Shinn |
| Quentin C. Karpilow | NEW JERSEY OFFICE OF THE |
| SHER EDLING LLP | ATTORNEY GENERAL |
| 100 Montgomery Street | DIVISION OF LAW |
| Suite 1410 | 25 Market Street |
| San Francisco, Cal. 94104 | Trenton, N.J. 08625 |
| matt@sheredling.com | Dianna.Shinn@law.njoag.gov |
| quentin@sheredling.com | |

Dated: July 10, 2024

*/s/ Elliott M. Davis*
Elliott M. Davis

*Counsel for*
*The Dow Chemical Company*