# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### No. 24-1753

---

## ATTORNEY GENERAL OF THE STATE OF NEW JERSEY ET AL.,
*Plaintiffs-Appellees,*

v.

## THE DOW CHEMICAL COMPANY ET AL.,
*Defendants-Appellants*

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF NEW JERSEY (No. 3:23-cv-2449 (RK))

---

## Opposition to Appellants' Motion for a Stay Pending Appeal

---

MATTHEW J. PLATKIN
 *Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
 *Solicitor General*


Dianna Shinn
Jeffrey Koziar
Kevin Fleming
Nathaniel Levy
 *Deputy Attorneys General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(862) 350-5800
Dianna.Shinn@njoag.gov

*Attorneys for Plaintiffs-Appellees*

*(Additional Counsel Appear on Signature Page)*

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................1

BACKGROUND AND PROCEDURAL HISTORY ...........................2

ARGUMENT ....................................................................................4

I.   APPELLANTS CANNOT JUSTIFY AN AUTOMATIC STAY. .......4

II.  APPELLANTS CANNOT JUSTIFY A STAY UNDER *NKEN*..........8

A.   Appellants Cannot Show a Sufficient Likelihood of Success. ...8

B.   The Equities Weigh Heavily Against a Stay. ...........................14

CONCLUSION................................................................................21

CERTIFICATE OF COMPLIANCE ................................................24

CERTIFICATE OF SERVICE .........................................................26

# TABLE OF AUTHORITIES

**Cases**

*A.O.A. v. Rennert*,
  No. 11-44, 2023 WL 8641601 (E.D. Mo. Sept. 5, 2023) ..................................7

*Agostini v. Piper Aircraft Corp.*,
  729 F.3d 350 (3d Cir. 2013) ..................................5

*Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
  423 F. Supp. 3d 1066 (D. Colo. 2019) ..................................19

*Boyle v. United Tech. Corp.*,
  487 U.S. 500 (1988) ..................................12

*BP P.L.C. v. Mayor & City Council of Baltimore*,
  140 S. Ct. 449 (2019) ..................................6

*BP P.L.C. v. Mayor & City Council of Baltimore*,
  141 S. Ct. 1532 (2021) ..................................6

*Carley v. Wheeled Coach*,
  991 F.2d 1117 (3d Cir. 1993) ..................................13

*Carre v. All. HC II LLC*,
  No. 21-20226, 2022 WL 17253590 (D.N.J. Nov. 28, 2022) ..................................16

*City & Cnty. of Honolulu v. Sunoco LP*,
  39 F.4th 1101 (9th Cir. 2022) ..................................11

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) .................................. *passim*

*Costantino v. City of Atl. City*,
  No. 13-6667, 2015 WL 668161 (D.N.J. Feb. 17, 2015) ..................................19

*Del. ex rel. Jennings v. BP Am. Inc.*,
  2022 WL 605822 (D. Del. Feb. 8, 2022) ..................................18

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
  __F.4th__, No. 23-1633, 2024 WL 3406290 (3d Cir. July 15, 2024) ........ *passim*

*Dirauf v. Berger*,
  57 F.4th 101 (3d Cir. 2022) ..................................5

*Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*,
  No. 21-2114, 2021 WL 2525714 (D.N.J. June 18, 2021) ..................................18

*Est. of Troilo by Troilo v. Rose Tree Place*,
  No. 22-00097, 2023 WL 5277926 (E.D. Pa. Aug. 16, 2023) ..............................16

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) ......................................................................................15

*Georgia v. Clark*,
  No. 23-13368, 2023 U.S. App. LEXIS 34018 (11th Cir. Dec. 21, 2023)..............5

*Giles v. Nylcare Health Plans*,
  172 F.3d 332 (5th Cir. 1999)...........................................................................16

*Grider v. Keystone Health Plan Cent., Inc.*,
  500 F.3d 322 (3d Cir. 2007) .............................................................................5

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982) ...........................................................................................5

*In re Citizens Bank, N.A.*,
  15 F.4th 607 (3d Cir. 2021) ..............................................................................4

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002) .....................................................................5, 15

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) ...........................................................4, 8, 12, 15

*Leroy v. Hume*,
  563 F. Supp. 3d 22 (E.D.N.Y. 2021).................................................................16

*Maglioli v. All. HC Holdings LLC*,
  16 F.4th 393 (3d Cir. 2021) ............................................................................12

*Maguire v. Hughes Aircraft Corp.*,
  912 F.2d 67 (3d Cir. 1990) .............................................................................13

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022)...........................................................................11

*Miller v. Travel Guard Grp., Inc.*,
  No. 21-09751, 2023 WL 7106482 (N.D. Cal. Aug. 1, 2023) ..............................6

*Mohr v. Trs. of Univ. of Penn.*,
  93 F.4th 100 (3d Cir. 2024)............................................................................11

*N. Miss. Med. Ctr., Inc. v. Quartiz Techs.*,
  No. 23-cv-3, 2024 WL 2262684 (N.D. Miss. May 17, 2024)...............................6

*Nken v. Holder*,
556 U.S. 418 (2009) ................................................................. *passim*

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016) ................................................9

*Plaquemines Par. v. Chevron USA, Inc.*,
84 F.4th 362 (5th Cir. 2023) ........................................ *passim*

*Proto Gage v. Fed. Ins. Co.*,
No. 21-12286, 2023 WL 9112923 (E.D. Mich. Dec. 28, 2023) ...........................6

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017) ................................................4

*Starbucks Corp. v. McKinney*,
144 S. Ct. 1570 (2024) ......................................................14

*Tafflin v. Levitt*,
493 U.S. 455 (1990) ........................................................16

*Texas v. EPA*,
No. 23-60069, 2023 WL 7204840 (5th Cir. May 1, 2023) .................................20

*United States v. Brace*,
No. 17-6, 2020 WL 4581183 (W.D. Pa. July 31, 2020) ....................................20

*United States v. Trump*,
No. 23-257, 2023 WL 8615775 (D.D.C. Dec. 13, 2023) ....................................6

*Westchester Cnty. v. Mylan Pharms., Inc.*,
No. 23-6096, 2024 WL 3043121 (S.D.N.Y. June 18, 2024) ................................6

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ..........................................................15

**Statutes**

28 U.S.C. § 1442(a) ................................................ 3, 8, 9

**Rules**

Federal Rule of Appellate Procedure 32(f) ............................................24

# INTRODUCTION

In early 2023, the State of New Jersey initiated this action in New Jersey court, asserting state-law claims against multiple companies for their role in contaminating drinking water in the State. Appellants—Dow Chemical Company, among others—removed the suit to federal court. After the State moved to remand, the district court issued a comprehensive opinion carefully addressing and rejecting each theory of removal and directing the Clerk to remand the case to state court. Dow appealed, and now seeks the extraordinary relief of a stay pending appeal, to freeze the State's state-court suit while this Court addresses this threshold question.

Appellants cannot justify such extraordinary preliminary relief. Demands for a stay pending appeal are analyzed by the familiar four-factor test for equitable relief from *Nken v. Holder*, 556 U.S. 418 (2009), which reserves relief for truly extraordinary circumstances. None are present here. On the equities, there is no need for a stay, because even were this Court to ultimately reverse the remand, the case would simply return to federal court at that time. Allowing this suit to proceed in state court in the interim merely reflects the ordinary burdens and process of litigation in our federalist system and imposes no actual and imminent irreparable injury. By contrast, a stay would impose grave harms on the State and public by barring this suit from proceeding in *any* forum during the appeal. Indeed, preventing a state court from proceeding with this action is particularly unjustified here, because

Appellants are not likely to prevail on their jurisdictional argument—namely, that their private conduct falls within the federal-officer removal law.

Nor can Appellants justify a stay notwithstanding these merits and equities by relying on *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), which authorizes an automatic stay pending appeal only where a party appeals the denial of an arbitration. As *Coinbase* held, because the federal district court loses jurisdiction over an issue that has been appealed to the circuit, that federal court cannot proceed with the case. But the traditional rule is reversed for state courts, which can consider cases even if an overlapping issue is pending before a federal appellate court. That is why courts have repeatedly held that *Coinbase* is limited to the arbitration context and why none have applied it to the remand context. Appellants have given this Court no reason to split from that consensus and adopt its unprecedented rule.

## BACKGROUND AND PROCEDURAL HISTORY

1,4-Dioxane is a synthetic chemical that is highly toxic and persistent in the environment and has been deemed a "likely human carcinogen" by public health authorities. Ex. A (Compl., ECF 1-2) ¶¶5, 30. Appellants have manufactured, marketed, and sold 1,4-dioxane and dioxane-containing products into New Jersey. *Id.* ¶¶1–13. Despite decades of their own research and industry wide notice regarding the known dangers of 1,4-dioxane, Appellants continued to manufacture and sell

1,4-dioxane and dioxane-containing products in New Jersey without adequate warnings, causing widespread 1,4-dioxane contamination. *Id.* ¶¶1–13, 55.

In March 2023, the New Jersey Attorney General and various New Jersey state entities (collectively, the "State") filed this action against Appellants in New Jersey state court, asserting state law claims. *Id.* ¶¶95–236. Appellants removed the case to federal court, asserting federal jurisdiction under, *inter alia*, the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). *See* Ex. B (Notice of Removal ("NOR"), ECF 1) ¶¶13–16. On April 23, 2024, the District of New Jersey remanded the case to state court. Ex. C ("Remand Op.," ECF 86); Ex. D (order, ECF 87).

That same day—but after the district court had mailed the transmittal letter— Appellant Dow requested an automatic stay of the remand order and appealed the remand to the Third Circuit. *See* ECF 89, 90. The district court granted the automatic stay on April 25, ECF 92, and the next day, Appellants filed a Motion to Stay Execution of Remand Order Pending Appeal, Ex. E ("MTS," ECF 93). On July 9, the district court denied that motion. Ex. F ("Stay Op.," ECF 102), Ex. G (order, ECF 103), Ex. H (transmittal letter, ECF 104). The court found that Appellants could not meet the most critical requirements for a stay under *Nken*—likelihood of success and irreparable harm. Stay Op.4–19. The court found that Appellants raised no new arguments on the jurisdictional merits. *Id.* at 6–16. It found Appellants' asserted injuries were too "speculative" on this record to constituted irreparable harm. *Id.* at

17. And it rejected Appellant's novel theory that *Coinbase* mandates an automatic stay as unfounded. *Id.* at 19–23.

On July 10, Appellants sought a stay from this Court. *See* CA3 ECF 22-1 ("Mot."). This opposition follows.

## ARGUMENT

## I. APPELLANTS CANNOT JUSTIFY AN AUTOMATIC STAY.

The standard for evaluating a stay pending appeal is the familiar four-factor *Nken* test. *See In re Citizens Bank, N.A.*, 15 F.4th 607, 615 (3d Cir. 2021); *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 178 (3d Cir. 2017). Those factors ensure that no relief is ordered unless, at a minimum, the movant is sufficiently likely to prevail and will be irretrievably harmed if the court waits until the appeal's conclusion to act. *See Nken*, 556 U.S. at 434. This test ensures this "extraordinary remedy," Stay Op.19 n.6, does not impermissibly "become ordinary," *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* ("*DSSA*"), __F.4th__, No. 23-1633, 2024 WL 3406290, at *4 (3d Cir. July 15, 2024).

Nothing in *Coinbase* supports Appellants' contrary demand for an automatic stay pending appeal. *Coinbase* addressed the "unrelated" issue of whether litigation can proceed in federal district court pending appeal from the denial of a motion to compel arbitration. Stay Op.20. Fundamental to *Coinbase* was the "longstanding

4

tenet" that an interlocutory appeal "divests the [federal] district court" of jurisdiction "over those aspects of the case involved in the appeal," which meant a *federal district court* could not proceed with a case when the question of whether it belonged instead in arbitration was on appeal. 599 U.S. at 740 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). The question here is different: it asks whether a state court could proceed with litigation when an appeal is pending in federal appellate court. But when it comes to state courts, the background rule is reversed, because in our federalist system, actions can proceed in both forums concurrently. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 329 (3d Cir. 2007); *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002). That is especially so for remand orders; state courts can immediately proceed with a litigation as soon as the remand transmittal issues from federal district court, as has already occurred here. *See* Stay Op.5–6 (citing *Agostini v. Piper Aircraft Corp.*, 729 F.3d 350, 355 (3d Cir. 2013)); *Dirauf v. Berger*, 57 F.4th 101, 106 (3d Cir. 2022).

That is why, as the district court recognized, every court to consider whether *Coinbase* applies to appeals from state-court remands has held it does not. *See* Stay Op.21–22; *Georgia v. Clark*, No. 23-13368, 2023 U.S. App. LEXIS 34018, at *2 (11th Cir. Dec. 21, 2023) (holding *Coinbase* is "limited to arbitration proceedings," and while "the *Griggs* 'background principle' animating *Coinbase*" could justify a stay of federal "*district* court proceedings," it does not justify staying a "*state* court

prosecution"); *Westchester Cnty. v. Mylan Pharms., Inc.*, No. 23-6096, 2024 WL 3043121, at *11 n.13. (S.D.N.Y. June 18, 2024) (rejecting automatic stay of remand, finding *Coinbase* "hardly dispositive"); *see also Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373–78 (5th Cir. 2023) (assessing and then denying stay-pending-appeal motion under *Nken* factors). Appellants' out-of-context citation to *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1536 (2021), *see* Mot.11, only proves the point: the Supreme Court denied the defendants' request for a stay of the remand pending certiorari in that case. *See BP P.L.C. v. Mayor & City Council of Baltimore*, 140 S. Ct. 449 (2019).

Indeed, across appellate contexts, courts have repeatedly recognized *Coinbase* as being specific to, and therefore limited to, arbitration. *See* Stay Op.21–22; *Proto Gage v. Fed. Ins. Co.*, No. 21-12286, 2023 WL 9112923, at *2 (E.D. Mich. Dec. 28, 2023); *N. Miss. Med. Ctr., Inc. v. Quartiz Techs.*, No. 23-cv-3, 2024 WL 2262684, at *2–7 (N.D. Miss. May 17, 2024); *Miller v. Travel Guard Grp., Inc.*, No. 21-09751, 2023 WL 7106482, at *2 (N.D. Cal. Aug. 1, 2023). Appellants cite just two cases expanding *Coinbase* beyond the arbitration context, Mot.13, but as the court below found, they are outliers and inapposite. *See* Stay Op.21 (distinguishing *United States v. Trump*, No. 23-257, 2023 WL 8615775, at *1 (D.D.C. Dec. 13, 2023), because it concerned appellate review of an absolute-immunity ruling, not a remand order, and

*A.O.A. v. Rennert*, No. 11-44, 2023 WL 8641601, at *1 (E.D. Mo. Sept. 5, 2023), as it involved an exclusive-forum selection clause that would be rendered nugatory).

Appellants' counterarguments do not pass muster. First, Appellants insist that their demanded stay would only pause further federal-court proceedings, not a state-court case. Mot.13 n.2. But as the district court appropriately observed, because it already effectuated the remand order and thus returned the case to state court, a stay would instead "paus[e]" state-court litigation. Stay Op.23 (finding "the gravamen of [this] motion is to stay the state court proceedings from progressing"). Appellants themselves argue on appeal that they seek to prevent "proceedings in the state court" from harming them. *See* Mot.21–22. Second, Appellants have argued that they cannot be expected to identify precedents in support because *Coinbase* is relatively recent. *See* Ex. I (ECF 99, "MTS Reply") at 13. But the intervening year has produced multiple orders rejecting their view, and in any event, *Coinbase* merely adopted the longstanding majority rule for stays in arbitration appeals, 599 U.S. at 741, yet Appellants cannot identify a single case adopting its rule for remand appeals prior to *Coinbase* either. Finally, Appellants get no further by citing the *Coinbase* dissent's concern about a parade-of-horribles. *See* Mot.12 (quoting 599 U.S. at 760 (Jackson, J., dissenting)). The dissent recognizes the majority "reaches only arbitration appeals" and "stops short" of endorsing stays in other contexts, and the dissent adds "it might well be that the concerns motivating today's mandatory-

general-stay rule do not extend beyond arbitration." 599 U.S. at 761. Indeed, the concerns are different in the context of a remand to state court. This Court should not be the first to require automatic stays for every remand appeal.

## II. APPELLANTS CANNOT JUSTIFY A STAY UNDER *NKEN*.

Appellants cannot meet their burden to justify a stay under *Nken*'s traditional framework either. A stay "is not a matter of right," *Nken*, 556 U.S. at 433; instead, like preliminary injunctions, stays pending appeal are an "extraordinary" equitable remedy reserved for "limited circumstances," *DSSA*, 2024 WL 3406290, at *3. *See Nken*, 556 U.S. at 428 (noting "overlap" between stays and preliminary injunctions). Courts consider four "traditional" factors, with the first two being "the most critical": (1) a "strong showing" of likelihood of success; (2) irreparable harm; (3) the balance of equities; and (4) the public interest. *Nken*, 556 U.S. at 426, 434; *Revel AC*, 802 F.3d at 570. This Court reviews likelihood of success de novo, but otherwise reviews the denial of a stay for abuse of discretion. *See Revel AC*, 802 F.3d at 567. The lack of merit and the equitable factors each suffice to foreclose this stay.

### A. Appellants Cannot Show a Sufficient Likelihood of Success.

To satisfy the first "critical" factor, Appellants must make "a strong showing" on the merits. *Id.* at 568. Appellants claim that they will succeed in arguing that their case is covered by the federal officer removal statute, 28 U.S.C. § 1442(a), whose "central aim" is "protecting officers of the federal government from interference by

litigation in state court while those officers are trying to carry out their duties." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016).[1] That law, in specific situations, can apply to private defendants too, with the "archetypal" example being claims challenging "actions [Defendant] took while working under a federal contract to produce an item the government needed … that the government otherwise would have been forced to produce on its own." *Id.* at 813. But to fit within Section 1442(a), the defendant must establish four elements:

> (1) the Appellant is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the Appellant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the Appellant are "for, or relating to" an act under color of federal office; and (4) the Appellant raises a colorable federal defense to the plaintiff's claims.

*Id.* (cleaned up). While Appellants are "persons" under the statute, they cannot make a strong showing on any (let alone all) of the remaining three elements.

1. Appellants cannot show they were "acting under" a federal officer or "for, or relating to" a federal office. Appellants' argument is that they used 1,4-dioxane as an ingredient in 1,1,1-trichloroethane (TCA), which was a solvent used to dissolve oil and grease in industrial settings. Remand Op.4. Appellants argue that the federal government adopted two military specifications for the TCA the armed services purchased, known as MilSpec and FedSpec, and that Dow used 1,4-dioxane to

---

[1] At least for purposes of the stay motion, Appellants abandoned their other theories for removal, which the district court thoroughly considered and rejected below.

achieve the stabilization those specifications required. *See id.* at 10, 13, 15–16. But Appellants do not deny that they were manufacturing dioxane-stabilized TCA long before the government promulgated these military specifications, and that this product was publicly available to private purchasers. Stay Op.9–11. Appellants also do not claim that they changed their dioxane-stabilized TCA formula to comply with MilSpec or FedSpec, and it is undisputed that these military specifications did not specifically require the use of 1,4-dioxane. *See* Stay Op.10–11.

As the district court found, those undisputed facts are fatal to the jurisdictional inquiry. While Appellants attempt to spin Dow's off-the-shelf products as "MilSpec- and FedSpec-compliant TCA" to suggest that it was "acting under" federal officers and "relating to" their contract, Mot.17, the district court found instead that "Dow had established and was selling dioxane-stabilized versions of its TCA on the private market prior to the promulgation of MilSpec and FedSpec." Remand Op.12, and that "this product was 'also available to the public' in addition to the federal government," Remand Op.10 (noting "Dow expressly concedes" both points). Even when Dow did work on MilSpec- and FedSpec-compliant TCA, "the specifications did *not* require that TCA be inhibited with 1,4-dioxane—Dow's hazardous chemical of choice." Stay Op.11 (emphasis in original). "Dow made th[at] decision[,] the issue in this case, independently and before the implementation of the regulations on which it relies." Remand Op.13. While it met with the federal government, Dow

simply cannot establish "that it incorporated 1,4-dioxane in its formulation at the behest of the federal government." *Id.* at 11.

Appellants' only basis for alleging government involvement is an affidavit of former Dow employee Karl Hoff stating that he and others at Dow attended one meeting with government officials regarding TCA. *See* Ex. J (ECF 73-1). But, as the district court held, "[a] single consultation meeting with the government does not rise to the level of supervision and direction contemplated by the statute." Remand Op.14 (noting that, in past cases where removal on federal officer grounds was held proper, "the government's oversight was significantly more specific and extensive than what Mr. Hoff loosely describes in this case"); *see also* Stay Op.10. This Court has held that "simply because a private party has a contractual relationship with the federal government does not mean that it is acting under that federal authority." *Mohr v. Trs. of Univ. of Penn.*, 93 F.4th 100, 106 (3d Cir. 2024). Appellants have even less here—a single meeting.

The undisputed record and the district court's factual findings "demonstrate[] that Dow was 'not doing the government's business' but instead, 'doing its own.'" Remand Op.17 (quoting *Mohr*, 93 F.4th at 105). To hold otherwise "would bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 230 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *City & Cnty. of*

*Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022) (denying federal officer removal because defendant had designed and created a product without federal input or supervision and simply sold it to the government in the course of a "normal commercial … relationship[] that [did] not involve detailed supervision"), *cert. denied*, 143 S. Ct. 1795 (2023). As the district court held, while "the phrase 'acting under' must be construed 'liberally[,]' … 'the phrase is not boundless[.]'" Stay Op.7; *accord Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021). Hoping for a sea change in the law is not a "strong showing" of success. *Revel AC*, 802 F.3d at 568.

2. Appellants' asserted federal contractor defense is also not "colorable." *See* Remand Op.22–24. Satisfying this final criterion requires proof that (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about dangers in the use of the equipment that were known to the supplier but not to the United States. Mot.18 (citing *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512 (1988)). But Dow at most alleges generally that the military used Dow's dioxane-stabilized TCA, not that it designed Dow's *formula*. *See* Stay Op.8, 11 (emphasizing the lack of evidence of government contract "prescrib[ing] the use of 1,4-dioxane"). Indeed, that "Dow was already selling a product [to the public] with the same 1,4-dioxane compound" and "has not alleged that MilSpec or FedSpec changed the product in ways relevant to

the proliferation of 1,4-dioxane in New Jersey[]" shows "the government effectively 'rubber stamp[ed]' existing formulations, rather than designing [it] in concert with Dow." Remand Op.23–24; *see* Stay Op.11; *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 71–72 (3d Cir. 1990) ("[The defense] does not apply when 'the government rubber stamps a design that a contractor has proposed[.]'").[2]

Nor does Dow refute, as required, that it had superior knowledge of TCA's potential risks not known to the federal government. Nothing Dow cites or alleges concerning the government's knowledge pertains to *MilSpec* or *FedSpec* TCA—the only products for which Dow argues it was acting under federal auspices, and therefore the only officers and agencies it even claims it was working with for purposes of Section 1442(s). *See* Mot.22. Consequently, while some federal agencies may have understood that 1,4-dioxane was a suspected carcinogen and was *sometimes* used in commercial TCA, nothing in the record demonstrates government knowledge that 1,4-dioxane was in the TCA it purchased. Remand Op.23. For this reason, too, Appellants cannot establish a "colorable" federal contractor defense.

---

[2] *Carley v. Wheeled Coach*, 991 F.2d 1117 (3d Cir. 1993), is not to the contrary. As the court below explained, those "specifications … were significantly more precise and extensive than the case at bar, where the only requirement was that the TCA be inhibited, or stabilized." Remand Op.23.

### B. The Equities Weigh Heavily Against a Stay.

Regardless of the merits, the equities independently foreclose a stay for any or all of three reasons: (1) the stay does not further the core purpose of interim equitable relief; (2) Appellants face no actual and imminent irreparable harm; and (3) the harms from a stay counsel strongly against further delay.

1. As an initial matter, a stay pending appeal is inappropriate because it would not advance the core purpose of preliminary equitable relief: preserving the status quo while litigation proceeds, which ensures a court can ultimately "render a meaningful decision" after resolution of the merits. *DSSA*, 2024 WL 3406290, at *4; *cf. id.* (noting "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until" suit concludes (quoting *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024))); *Nken*, 556 U.S. at 429 (describing similar purpose of stays). In this case, the status quo cuts squarely against Appellants; as noted, the district court returned this case to state court via transmittal of the remand order. *See* Ex. H. Nor is a stay overturning that status quo necessary to protect federal jurisdiction, because in the unlikely event this Court ultimately reverses the remand order, Appellants acknowledge that improperly remanded actions could be returned from state court to federal court at that time. *See* Mot.9 (citing cases). A stay pending appeal would therefore "alter[]," not preserve, the status quo, *Nken*, 556 U.S. at 429, without any benefits to protecting this Court's ultimate ability to act.

2. Nor can Appellants establish any imminent irreparable harm necessary to justify extraordinary relief. To satisfy this "critical" factor, they must "demonstrate that irreparable injury is *likely*," and "not merely possible," without a stay. *Revel AC*, 802 F.3d at 568–69 (cleaned up) (quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008)); *see Nken*, 556 U.S. at 434–35. Such irreparable harm must be "neither remote nor speculative, but actual and imminent." *Revel AC*, 802 F.3d at 571; *see also DSSA*, 2024 WL 3406290, at *4 (even the mere "threat of irreparable harm" does not necessarily "rise to th[e] level" sufficient for equitable relief).

Appellants come nowhere close to clearing that high bar. The gravamen of their irreparable-harm argument is that they "would be forced to litigate concurrent proceedings in this Court and state court." Mot.21. But there is nothing concerning about concurrent state and federal litigation in our federalist system, where "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court." *Diet Drugs*, 282 F.3d at 234. While Appellants invoke the "money and time" that they would "spend" in state court absent a stay, it is well-settled that "litigation expense, even substantial and unrecoupable cost," is insufficient for extraordinary equitable relief. *Coinbase*, 599 U.S. at 746 (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)); *see also Plaquemines Par.*, 84 F.4th at 376 (same, and denying stay pending interlocutory federal-officer-removal appeal); Stay Op.18 (noting Appellants "concede" this point). Courts have

repeatedly found irreparable harm lacking where the harm is based on litigation expense. Stay Op.17–18 (citing *Carre v. All. HC II LLC*, No. 21-20226, 2022 WL 17253590, at *3 (D.N.J. Nov. 28, 2022), and *Leroy v. Hume*, 563 F. Supp. 3d 22, 28–30 (E.D.N.Y. 2021)); *see also Est. of Troilo by Troilo v. Rose Tree Place*, No. 22-00097, 2023 WL 5277926, at *5 (E.D. Pa. Aug. 16, 2023).

Appellants' responses are unavailing. Appellants complain that the state court might issue rulings while this appeal is pending, notwithstanding their alleged "right to have a federal court" decide the questions in the case. Mot.21–22. But this Court has rejected parties' efforts to collapse the merits and irreparable-harm inquiries. *See DSSA*, 2024 WL 3406290, *5–6. Moreover, Appellants' claim that they are somehow injured by the possibility of state courts evaluating these state-law claims contradicts decades of teaching that the state courts are of "equal dignity with federal courts," *Giles v. Nylcare Health Plans*, 172 F.3d 332, 339 (5th Cir. 1999), and are competent to handle federal questions too, *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). If a state court does eventually issue an erroneous ruling before the case returns to federal court, then even Appellants admit "the district court may be free to reevaluate certain state-court rulings," Mot.22, meaning the harm is not imminent or irreparable.

There is also no merit to Appellants' contention that allowing the state court to proceed with this action risks irreparable harm from "inconsistent or irreversible"

decisions. Mot.23. As the district court found, this fear of irreversible rulings prior to resolution of this appeal is "speculative at best." Stay Op.17. The most Appellants can offer is that there "may be" decisions "whose bell cannot be un-rung, like certain privilege and document-production rulings." Mot.22. Appellants in essence assume this Court will "not review the appeal until after the state court reache[s] the merits," but as the court below found on this record, this litigation remains in its infancy, and a "lengthy period of discovery" will likely ensue before the state court issues merits decisions. Stay Op.17; *Plaquemines Par.*, 84 F.4th at 376 ("It is not plausible that the case will reach trial before our court rules on defendants' appeal."). Even if Appellants' timeline is borne out, they can seek tailored relief then, rather than shut down a state-court suit wholesale. *See Plaquemines Par.*, 84 F.4th at 376 (rejecting same argument because movants can "submit [another] emergency motion" if facts evolve that "demonstrate more than a mere possibility of irreparable injury").

Appellants' concerns about discovery are particularly unjustified. As a general matter, discovery obligations imposed in state court are unlikely to be wasteful; discovery will be relevant "even if the case" returns "to federal court" and thus yields "little risk of duplicated efforts." Stay Op.17. But that is especially true here, as Appellants have already completed or are in the middle of discovery in other cases about the same misconduct in Long Island, *see, e.g.*, *Suffolk Cnty. Water Authority v. Dow Chem. Co.*, No. 17-6980 (E.D.N.Y.), where materials are likely

overlapping. That further reduces the discovery burdens and any risk that state court discovery would require releasing sensitive information that is not already public or would not become public through litigating this case in federal court. And if new and privileged documents may be released, Appellants can seek to address any such concerns via protective orders at that time. That is neither actual nor imminent harm.

The unreported district-court decisions Appellants rely on are neither precedential nor persuasive. For one, they attribute undue importance to the mere "potential of inconsistent outcomes" and overlook the range of avenues available for addressing such risks should they grow more imminent. *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, No. 21-2114, 2021 WL 2525714, at *7 n.3 (D.N.J. June 18, 2021) (noting, in contrast to State, plaintiffs did not "dispute" movant's irreparable harm); *see also* Stay Op.18–19 (distinguishing *Maglioli* given its "unique posture" and flawed reasoning). For another, those decisions either did not have the benefit of or grapple with this Court's teachings as to the scope of interim equitable relief, *see DSSA*, 2024 WL 3406290, at *5–6, or the Fifth Circuit's careful and thoughtful rejection of this approach to irreparable harm, *see Plaquemines Par.*, 84 F.4th at 376. Finally, to the extent those decisions' irreparable-harm analyses rest on the statutory right to appellate review of federal-officer remand orders, *see Del. ex rel. Jennings v. BP Am. Inc.*, No. 20-1429, 2022 WL 605822, at *2 (D. Del. Feb. 8, 2022); Mot.21,

23, 26, they conflate the equities with the merits, *contra DSSA*, 2024 WL 3406290, at *5–6. The lack of irreparable harm is fatal to this motion.

3. Finally, the remaining equitable factors cut strongly against a stay. Where the party opposing the stay is the government, the harm to the opposing party and public interest merge. *See Nken*, 556 U.S. at 435. A stay would gravely harm the State and its citizens by impairing the State's ability to proceed with its suit and fund comprehensive 1,4-dioxane treatment of New Jersey's drinking water.

A stay would cause extraordinary delay and undermine the State's ability to prove its case. The stay would mean *no court* could commence discovery or otherwise advance the proceeding for at least another year, in a case that was already filed over one year ago. *See Plaquemines Par.*, 84 F.4th at 377 (finding that "[c]omity toward the state … and its courts also weighs in favor of minimizing further unnecessary federal-court interference with the progression of this lawsuit"); *cf. Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 423 F. Supp. 3d 1066, 1075 (D. Colo. 2019) (equitable factors weighed against stay where claims "were filed a year ago"). Further delay would risk the irreversible loss of evidence in a case that involves conduct not only in the recent past, but conduct that dates back three decades. *See, e.g.*, *Costantino v. City of Atl. City*, No. 13-6667, 2015 WL 668161, at *4 (D.N.J. Feb. 17, 2015). Notwithstanding their promises of a litigation hold, relevant documents have already been lost or destroyed, and certain witnesses have

already become unavailable, in analogous 1,4-dioxane contamination cases pending in other jurisdictions. *See, e.g.*, *Suffolk Cnty. Water Authority*, No. 17-cv-6980, ECF 511, at 13–20 (Ex. K). Delay is also a matter of public health, preventing the State from obtaining funding from polluters for restoration of natural resources and treatment of drinking water. *See United States v. Brace*, No. 17-6, 2020 WL 4581183, at *4 (W.D. Pa. July 31, 2020) (denying stay given "strong public interest in favor of" environment and health).

Appellants thus cannot justify this "interference with what could otherwise be fractional progress in state court during the pendency of this appeal." *Plaquemines Par.*, 84 F.4th at 377 (emphasizing such interference is especially unjustified where "the remand order was already mailed to state court"). Appellants respond that the State's asserted delay in initiating this case undermines its concerns and supports a stay. *See* Mot.24. But as the State noted in its Complaint, its investigation into 1,4-dioxane contamination is still ongoing and even now the full extent of contamination in New Jersey remains unknown. Compl. ¶¶11, 70.[3] Moreover, claims of delay hardly help Appellants here: despite their worry that the state-court proceeding will outpace this federal appeal, Appellants inexplicably never requested

---

[3] That distinguishes this case from *Texas v. EPA*, No. 23-60069, 2023 WL 7204840 (5th Cir. May 1, 2023), which dealt with the inapposite claim that a federal agency failed to meet a statutory deadline. *See* Mot.25. Moreover, *Texas* involved concrete costs imposed by federal rule, rather than speculative complaints about burdens of litigating in state court. 2023 WL 7204840, at *11.

that this appeal be expedited, and instead jumped to a request for an order barring a state court from proceeding entirely. *See Plaquemines Par.*, 84 F.4th at 376 (emphasizing movants "can request to expedite the appeal" to address any risks). Finally, Appellants' effort to chastise New Jersey is outweighed by the harms to comity and potential risks to public health of the stay they demand. Dow has not shown the balance of the equities tips in its favor—and certainly not that the district court abused its discretion in finding the equities weighed against a stay. That, too, is dispositive.

## CONCLUSION

This Court should deny Appellants' motion for a stay pending appeal.

Respectfully submitted,

Dated: July 22, 2024

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

JEREMY M. FEIGENBAUM
Solicitor General

*/s/ Dianna Shinn*
Dianna Shinn
Jeffrey Koziar
Kevin Fleming
Nathaniel Levy
Deputy Attorneys General
Richard J. Hughes Justice Complex
25 Market Street; PO Box 093
Trenton, New Jersey 08625-0093
(609) 376-2740

Dianna.Shinn@law.njoag.gov
Jeff.Koziar@law.njoag.gov
Kevin.Fleming@law.njoag.gov
Nathaniel.Levy@law.njoag.gov

**SHER EDLING LLP**

*/s/ Matthew K. Edling_____*
Matthew K. Edling
Victor M. Sher
Katie H. Jones
Quentin C. Karpilow
Paul Stephan
100 Montgomery St. Suite 1401
San Francisco, CA 94104
(628) 231-2500
matt@sheredling.com
vic@sheredling.com
katie@sheredling.com
quentin@sheredling.com
paul@sheredling.com

**HAUSFELD LLP**

Katie R. Beran (031262012)
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
kberan@hausfeld.com

James Gotz
One Marina Park Drive
Boston, MA 02210
jgotz@hausfeld.com

Timothy Lockwood Kelly
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
tkelly@hausfeld.com

Amanda Lee-DasGupta

888 16 Street, N.W., Suite 300
Washington, D.C. 20006
alee@hausfeld.com

Renner Walker (264302018)
33 Whitehall Street
New York, NY 10004
rwalker@hausfeld.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Rules 27(d)(2)(a), 32(a)(5), and 32(a)(6), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 5,179 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

This brief complies with L.A.R. 31.1(c) in that prior to being electronically submitted, it was scanned by the following virus-detection software and found to be free from computer viruses:

> Company: McAfee, Inc.
>
> Product: McAfee Endpoint Security Platform Version 10.7.0.2687 and McAfee Threat Prevention Version 10.7.0.787.

Dated: July 22, 2024                    /s/ *Matthew K. Edling*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Matthew K. Edling*